UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARBARA A. REYNOLDS, | : |
| | : |
| Plaintiff, | : CASE NO. |
| | : |
| v. | : |
| | : |
| TOWN OF SUFFIELD, a Connecticut municipality; | : |
| MICHAEL MANZI, Chief, Suffield Police Department, | : |
| Town of Suffield, in his Official and Individual | : |
| Capacities; | : |
| SCOTT R. LINGENFELTER, former First Selectman, | : |
| Town of Suffield, in his Individual Capacity; | : |
| DONALD MINER, Chairman, Suffield Police Commission, | : |
| Town of Suffield, in his Official and Individual Capacities; | : |
| DAVID BOURQUE, former Captain, Suffield Police | : |
| Department, Town of Suffield, in his Individual Capacity; | : |
| ROBERT BROWN, Sergeant, Suffield Police Department, | : |
| Town of Suffield, in his Official and Individual Capacities, | : |
| JOYCE FEENEY, Human Resource Director, Town of | : |
| Suffield, in her Official and Individual Capacities, | : **DEMAND FOR JURY TRIAL** |
| | : |
| Defendants. | : SEPTEMBER 27, 2010 |

## COMPLAINT

1.  This cause of action, brought by the Plaintiff, Barbara A. Reynolds, a former Suffield Police Department sworn officer, alleges the unlawful termination of her employment due to her sex and/or pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act, 42 U.S.C., § 12203, and the Rehabilitation Act of 1973, 29 U.S.C. § 794.

2.  The Plaintiff seeks reinstatement to her employment as a sworn officer in the Suffield Police Department, monetary damages for lost wages and benefits of employment, compensatory and punitive damages, and reasonable attorney's fees and costs.

## JURISDICTION AND VENUE

3. Jurisdiction in this Court is invoked under 28 U.S.C. §§ 1331, 1343, 42 U.S.C. § 12117, and 29 U.S.C. § 794(a).

4. The Court has supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367, as the state law claims are so related to the federal claims that they form part of the same case or controversy.

5. The Plaintiff filed an administrative charge with the Equal Employment Opportunities Commission (EEOC) on September 11, 2009.

6. The EEOC informed the Plaintiff of her right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and Titles I and V of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111 et seq., and § 12203, respectively, within ninety (90) days of June 28, 2010.  See attached Notices of Right to Sue dated June 28, 2010.

7. The supplemental jurisdiction of the Court over the claims arising under state law is invoked pursuant to 28 U.S.C. § 1367.

## PARTIES

8. The Plaintiff Barbara A. Reynolds ("Reynolds") resides in Storrs, Connecticut.

9. The Defendant Town of Suffield (or, hereinafter, "Town"), is a municipality as defined under the Connecticut General Statutes with its business address at 83 Mountain Road, Suffield, Connecticut.

10. The Town engages in an industry affecting commerce and has employed 15 or more persons for each working day in each of the 20 calendar weeks of the current or preceding calendar year.

11. The Defendant Michael Manzi was, at all relevant times to the Complaint, the Chief of the Suffield Police Department for the Town of Suffield and is sued in his official and individual capacities.

12. The Defendant Scott R. Lingenfelter was, at all relevant times to the Complaint, the First Selectman for the Town of Suffield and is sued in his individual capacity.

13. The Defendant Donald Miner was, at all relevant times to the Complaint, the Chairman of the Suffield Police Commissioner in the Town of Suffield and is sued in his official and individual capacities.

14. The Defendant David Bourque was, at all relevant times to the Complaint, a Captain in the Suffield Police Department for the Town of Suffield and is sued in his individual capacity.

15. The Defendant Robert Brown was, at all relevant times to the Complaint, a Sergeant in the Suffield Police Department in the Town of Suffield and is sued in his official and individual capacities.

16. The Defendant Joyce Feeney was, at all relevant times to the Complaint, the Human Resources Director for the Town of Suffield and is sued in her official and individual capacities.

**FACTS**

17. Reynolds was employed by the Town from March 7, 2006, through July 9, 2009.

18. Reynolds was pregnant at the time of her termination on July 9, 2009, with a due date of November 28, 2009.

19. When Reynolds' pregnancy was confirmed on March 26, 2009, Reynolds contacted her supervisor, SPD Captain David Bourque ("Bourque"), to inform him of her medical status and the limitations placed on her job description by her physician.

20. The limitations placed on Reynolds' job description by her physician had the effect of removing Reynolds from patrol duty as the belt worn by patrol officers weighs more than twenty pounds.

21. Reynolds informed Bourque that she was already experiencing discomfort related to Reynolds' pregnancy.

22. Bourque told Reynolds that he knew several female police officers who worked patrol through at least their first trimester and although he said he would weigh the utility belt worn with Reynolds' patrol uniform, he never did.

23. When Reynolds reported to work at 3 PM on March 27, 2009, she provided SPD Chief Michael Manzi ("Manzi") a physician's note confirming her pregnancy and limiting her job description to include no lifting greater than twenty pounds.

24. Prior to Reynolds' conversation with Manzi, she spoke with SPD Sergeant Thomas Van Tasel ("Sgt. Van Tasel") at 2:45 PM on March 27, 2009, regarding an internal investigation of an off-duty incident.

25. The internal investigation of the off-duty incident had been pending, to Reynolds' knowledge, since March 7, 2009.

26. The off-duty incident occurred at Reynolds' home on February 21, 2009, involved no criminal activity, and did not result in any arrest but a report to Manzi by the state police alleged conduct unbecoming an officer.

27. When Reynolds requested from Sgt. Van Tasel information about the pending investigation, Sgt. Van Tasel informed Reynolds that he would be conducting an interview of Reynolds regarding the investigation at 3 PM on February 27, 2009.

28. Reynolds told Sgt. Van Tasel that this was not sufficient time for Reynolds to obtain union representation.

29. Sgt. Van Tasel acknowledged Reynolds' right to union representation but when she requested more time, Sgt. Van Tasel denied Reynolds the additional time.

30. Reynolds called Manzi and arranged to speak with him.

31. Bourque followed Reynolds into Manzi's office and at that time Reynolds presented Chief Manzi with her physician's note regarding the pregnancy.

32. Reynolds then asked Manzi and Bourque why she had only been informed of an investigative interview fifteen minutes in advance of the interview.

33. Reynolds told Manzi and Bourque that she required additional time to prepare and that she was overwhelmed physically.

34. Bourque told Reynolds that union representation was a courtesy extended by the SPD.

35. Union representation was not available for approximately one hour.

36. Reynolds then agreed to the interview believing that she had no other choice.

37. SPD Lieutenant Craig Huntley ("Lt. Huntley") joined Sgt. Van Tasel and Reynolds in the interview room as a witness.

38. Reynolds requested a different witness based on her history with Lt. Huntley which Sgt. Van Tasel was aware of including constant sexual innuendo, grabbing Reynolds' hair as she was working at a computer desk, contacting Reynolds on July 27, 2008, while she was

5

recovering from nose surgery to imply that she also had breast enhancement surgery by referring to the status of Reynolds' "tits," following Reynolds at off-duty events in efforts to buy her drinks, and calling Reynolds repeatedly on her cell phone after finding out about her divorce, and calling Reynolds "sweet pea," "buttercup," and "sweetheart."

39. Reynolds complained to Manzi about Lt. Huntley's sexual comments but the comments did not stop and during the winter of 2008-09, Lt. Huntley interrupted a conversation that Reynolds was having with a co-worker about children's swimming classes by asking Reynolds if she was going to wear a two-piece bathing suit at the pool.

40. Lt. Huntley's conduct became so aggressive on or about May 25, 2008, at an off-duty party held in celebration of Bourque's birthday that Reynolds felt compelled to call an officer on-duty, Officer Jeremy DePietro, to report Lt. Huntley's conduct.

41. Sgt. Van Tasel denied Reynolds' request for a different witness and the interview proceeded when Lt. Huntley arrived.

42. Despite Lt. Huntley's status as a witness at the interview, he passed notes to Sgt. Van Tasel and denied Reynolds time to talk to union representation once union representation arrived.

43. As a result of the investigation, Reynolds was disciplined which consisted of an unpaid thirty day calendar suspension from April 15, 2009, through May 15, 2009.

44. During the early morning of March 30, 2009, Reynolds experienced extreme pain on the lower left side of her abdomen.

45. Reynolds contacted her physician that morning and was scheduled for an appointment that morning.

46. Reynolds contacted Bourque and advised him that she had a physician's note and would be staying home that day on the advice of her physician.

47. Bourque stated that he would need a phone call from the physician and that the physician would have to contact him.

48. Reynolds contacted the physician and explained to him that Bourque required a phone call from the physician to confirm Reynolds' status.

49. After Reynolds' physician contacted Bourque, Bourque told Reynolds she could stay home that day but demanded that Reynolds provide him a note when she returned to work.

50. To Reynolds' knowledge, Bourque nor any other supervisor has ever challenged a physician's note and demanded a follow-up phone call from the physician.

51. In May 2009, Town Human Resources Director Joyce Feeney ("Feeney") denied Reynolds' request to file a claim for short term disability with the Town through Assurant Employee Benefits.

52. Reynolds then spoke to Sgt. Brown regarding the denial of her request to file a claim for short term disability and met with Manzi and Sgt. Brown.

53. In seeking short term disability Reynolds relied on SPD General Order # 33-2 dated July 15, 2008, which provided: "Non-Duty injuries shall be handled in accordance with contractual language in regard to short term and long term disability claims."

54. During the meeting with Manzi and Sgt. Brown, Manzi downloaded SPD General Order # 33-2 dated October 20, 2008, rescinding the July 15, 2008, version.

55. The revised SPD General Order # 33-2 dated October 20, 2008, had never been distributed or made available to Reynolds or, to her knowledge, any other SPD personnel.

56. The revised SPD General Order # 33-2 dated October 20, 2008, omitted the provision in the SPD General Order dated July 15, 2008, stating: "Non-Duty injuries shall be handled in accordance with contractual language in regard to short term and long term disability claims."

57. Manzi denied Reynolds' eligibility for short term disability and modified SPD General Order # 33-2 in violation of the Pregnancy Act of 1978 to deny her benefits due under the Town's short term disability policy.

58. Reynolds then requested an assignment to light duty which based on past practice would allow her to work Monday through Friday during the day.

59. This request had been denied previously by Bourque when Reynolds discussed the March 31, 2009, physician's note with Bourque.

60. Bourque had informed Reynolds at that time that if Reynolds provided a physician's note stating that she could not work evenings, Bourque would challenge the note.

61. Under the short term disability policy, pregnancy is considered a disability which qualified Reynolds to work light duty by the policy's own language.

62. Reynolds never received the benefit of short term disability because she was denied the opportunity to apply.

63. In the midst of Reynolds' suspension, on May 10, 2009, an SPD patrol officer, Officer DePietro, asked Reynolds by text message if she had heard about Sgt. Van Tasel's motor vehicle incident of May 9, 2009.

64. Reynolds then called Officer DePietro and learned that Sgt. Van Tasel had crashed his motor vehicle at approximately 3:50 AM in Somers after a Fraternal Order of Police event in Bloomfield, Connecticut.

65. In consideration of Reynolds' disciplinary suspension which arose from an off-duty incident at her home, Reynolds assumed that this third late-night, one car, motor vehicle accident that Sgt. Van Tasel had been involved in, would result in discipline at least or more severe than Reynolds suspension.

66. Police reports confirm that Sgt. Van Tasel was involved in one-car accidents on January 1, 2006, at 3:25 AM and May 9, 2009, at 3:49 AM involving utility poles.

67. Sgt. Van Tasel received no discipline or discipline far less severe than Reynolds' suspension for conduct that was more severe.

68. SPD Officer Robert Dabkowski ("Officer Dabkowski"), the Local 1577 President, told Reynolds that it was not fair for the administration to discipline her so harshly and not take any action against Sgt. Van Tasel or Lt. Huntley.

69. Officer Dabkowski told Reynolds that no one had filed a complaint against Sgt. Van Tasel and that Reynolds was in the best position to file a complaint due to the inequality between the discipline she received for conduct less serious than the conduct allegedly engaged in by Sgt. Van Tasel that was not investigated.

70. Reynolds then checked the ISO Claimsearch website on June 10, 2009, to confirm the occurrence of the motor vehicle accidents attributed to Sgt. Van Tasel.

71. The information available to Reynolds using the ISO Claimsearch website was public information which could have acquired through other means.

72. Reynolds hesitated to report the confirmation of these motor vehicles accidents to Manzi because she wanted to keep her job and knew that bringing the inequality between my discipline and the lack of investigation into Sgt. Van Tasel's reported conduct would present a challenge to the administration that, combined with her recent notice of pregnancy and the

physician's note tendered to Manzi on February 27, 2009, in probability would result in a pre-textual termination.

73. Despite Reynolds' concerns, she contacted Manzi on July 3, 2009, and requested a meeting.

74. SPD General Order # 1-3, Section VI(B), provides that "[E]mployees shall report through proper channels any violation of law, rules, regulations, procedures, directives or orders that are brought to their attention or any violation they have personal knowledge of having been committed by any employee of the department."

75. Reynolds told Manzi on July 3, 2009, that it was her belief that the May 9, 2009, motor vehicle accident had been covered up and that she was being treated differently because she was female.

76. When Reynolds referred to gender, Manzi became increasingly defensive and told Reynolds that she had no reason to question him.

77. Reynolds filed a complaint with Manzi at the conclusion of the July 3, 2009, discussion stating that she making a complaint.

78. Reynolds continued by telling Chief Manzi that after the discipline she had received from him, a very strong precedent had been set for disciplining Town police officers and that by taking no action against Sgt. Van Tasel, it appeared the precedent started and ended with Reynolds, which, again, made Reynolds believe she was being treated differently.

79. During her shift on July 8, 2009, Bourque told Reynolds that he needed to speak with her.

80. Reynolds followed Bourque into Manzi's office and was met by Manzi, Feeney, SPD Detective Mark Sargent, and SPD Administrative Assistant Karen McKowen.

81. Manzi informed Reynolds that she had engaged in felonious conduct by using a SPD computer to look at personal information regarding Sgt. Van Tasel.

82. Reynolds had not engaged in felonious conduct.

83. Chief Manzi told Reynolds that an internal investigation had not yet been conducted and that he would give Reynolds the option of resigning immediately.

84. Manzi told Reynolds that in the event she did not resign an internal investigation would be conducted and upon its completion Reynolds would be terminated and facing felony criminal charges.

85. Manzi told Reynolds that she had twenty-four hours to make her decision, which Manzi needed by 10:00 AM on July 9, 2009, and, that in the event Reynolds resigned, Manzi stated that she would be compensated for her benefit time and able to maintain her current insurance coverage through COBRA.

86. Manzi told Reynolds to leave and that she would be compensated for the remainder of her July 8, 2009, shift.

87. Prior to leaving on July 8, 2009, Reynolds briefly spoke to SPD Detective Mark Sargent regarding union representation and expressed her interest in speaking to a union attorney.

88. Reynolds then asked Manzi for more time to make her decision.

89. Reynolds explained to Chief Manzi that she needed more time to find and meet with legal counsel but Manzi denied her request for more time.

90. The following morning, on July 9, 2009, Reynolds emailed a letter to Chief Manzi, which was copied to Feeney.

91.     The letter stated:

> *Chief Manzi,*
> *After careful consideration I was decided to resign from my*
> *current position as police officer for the Town of Suffield, which*
> *I request be effective immediately.  At this time I feel my decision*
> *will allow me to focus on things most important and pursue other*
> *endeavors that will be beneficial to both me and my family.*

92.     Reynolds did not want to resign, but felt threatened and pressured into doing so because she was being threatened with arrest.

93.     Reynolds' use of the SPD's computer, on or about June 10, 2009, was only to verify that the motor vehicle accident, which she believed was a crime, had actually occurred.

94.     Based on what Reynolds knew of the incident that occurred on May 9, 2009 and ultimately involved two members of her department, Sgt. Van Tasel and Lt. Huntley, she was acting in good faith and believed that multiple crimes and/or department policy violations had occurred and the parties involved were being protected to the detriment of community safety and the reputation of the SPD.

95.     Reynolds requested reinstatement to her position by letter to the Town's First Selectman through her counsel dated August 21, 2008.

96.     The Town denied Reynolds reinstatement.

## CLAIMS AND VIOLATIONS

97.     The Town of Suffield's decision to terminate the Plaintiff's employment on July 8, 2009, was motivated by the Plaintiff's gender and/or pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act, 42 U.S.C., § 12203, and the Rehabilitation Act of 1973, 29 U.S.C. § 794.

12

98. Prior to her termination, the Town of Suffield refused to grant the Plaintiff a reasonable leave of absence for disability resulting from her pregnancy.

99. The Plaintiff was treated differently by the Town based on her gender and her pregnancy and she received harsher discipline than the discipline imposed on male employees of the SPD.

100. The Town's termination of the Plaintiff was motivated by the Plaintiff's gender, her pregnancy, her complaints of discrimination based on gender, pregnancy, and sexual harassment, and speech protected under General Statutes § 31-51q.

101. As a result of the Town of Suffield's unlawful conduct, the Plaintiff has suffered a loss of wages and benefits of employment, and has experienced anxiety, embarrassment, pain, suffering and emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff suffers damages and requests this Court:

    a.    Award the Plaintiff equitable relief including back-pay and lost benefits;

    b.    Award compensatory and punitive damages;

    c.    Award the Plaintiff reasonable attorney's fees and costs;

    d.    Award such other further relief as this court may deem appropriate.

Dated this 27th day of September, 2010, at Torrington, Connecticut.


                      PLAINTIFF
                      BARBARA A. REYNOLDS


BY:    /s/ Rachel M. Baird
         Rachel M. Baird  (ct12131)
         Law Office of Rachel M. Baird
         Stonegate Professional Building
         379 Prospect Street
         Torrington CT 06790-5238
         Tel:  (860) 626-9991
         Fax:  (860) 626-9992
         Email:  rbaird@rachelbairdlaw.com

*Her Attorney*



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

950 Pennsylvania Avenue, N.W.
Karen Ferguson, EMP, PHB, Room 4239
Washington, DC 20530

CERTIFIED MAIL
5067 0399

June 28, 2010

Ms. Barbara A. Reynolds
c/o Rachel M. Baird, Esquire
Law Office of Rachel M. Baird
Attorney at Law
379 Prospect Street
Torrington, CT  06790-5238

Re: EEOC Charge Against Town of Suffield
     No. 16A201000022

Dear Ms. Reynolds:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under:
   Title I of the Americans with Disabilities Act of 1990,
   42 U.S.C. 12111, et seq., and,
   Title V, Section 503 of the Act, 42 U.S.C. 12203.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Boston Area Office, Boston, MA.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                      Sincerely,

                                      Thomas E. Perez
                                      Assistant Attorney General
                                      Civil Rights Division

                                  by  /s/ Karen J. Ferguson
                                      Karen L. Ferguson
                                      Supervisory Civil Rights Analyst
                                      Employment Litigation Section

cc: Boston Area Office, EEOC
    Town of Suffield



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

CERTIFIED MAIL
5067 0399

June 28, 2010

Ms. Barbara A. Reynolds
c/o Rachel M. Baird, Esquire
Law Office of Rachel M. Baird
Attorney at Law
379 Prospect Street
Torrington, CT  06790-5238

Re:  EEOC Charge Against Town of Suffield
     No. 16A201000022

Dear Ms. Reynolds:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Boston Area Office, Boston, MA.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                      Sincerely,

                                      Thomas E. Perez
                                      Assistant Attorney General
                                      Civil Rights Division

                                 by   /s/ Karen J. Ferguson
                                      Karen L. Ferguson
                                      Supervisory Civil Rights Analyst
                                      Employment Litigation Section

cc: Boston Area Office, EEOC
    Town of Suffield